The People of Puerto Rico, Plaintiff and Appellee, *v.* Rosa Celorio de Tizol, Defendant and Appellant.

No. 5852. Argued December 18, 1935.—Decided January 17, 1936.

*E. Pérez Casalduc* for appellant. *R. A. Gómez, Prosecuting Attorney,* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the court.

Rosa Celorio was accused of slander by Fernando Mariani. It is alleged in the complaint that the defendant, maliciously and wilfully, exposed the wife of the complainant, Amanda Mariani, to public ridicule and contempt, by addressing to her certain offensive words which are set forth in the complaint.

The district court found the defendant guilty, and sentenced her to pay a fine of $50. Thereupon the defendant took an appeal from that judgment, and she urges that the lower court erred in finding her guilty and in holding that the words attributed to her were uttered with the malicious intent to make other persons present believe that the supposed injured person was a woman of immoral conduct, and to expose her through those utterances to public ridicule and contempt.

In order to decide the question raised by the appellant it is necessary to examine the words on which the lower court based its judgment, together with the evidence introduced. The allegations of the complaint are supported by the testimony of two witnesses, the complainant and his wife, who lived in a house very near to the one in which Mrs. Celorio then resided. The evidence shows that both families quarreled because a young daughter of the Mariani spouses had fought with another child of the defendant, Mrs. Celorio. The witnesses for the defense stated that the origin of said quarrel was the fact that Mrs. Mariani had struck with her hand a daughter of Mrs. Celorio. Mrs. Mariani testified that the defendant looked out of a window of her home, and shouted at her the following words: "Hey, Amanda, you scoundrel, hussy, come out here, you're nothing but a despicable cur, a dirty strumpet," adding that her husband was nothing but a poltroon. The complainant, Fernando Mariani, stated that the defendant had spoken the following words to his wife: "scoundrel, hussy, who is Amanda Marín? A

dirty whore, a dirty strumpet," and charged that her husband was a poltroon.

The defense argues that even admitting that the appellant had called Mrs. Mariani a dirty whore and all the other names charged, it is clearly to be inferred from the evidence introduced that those words were spoken in a moment of anger, blinded by a mother's love when her daughter told her that Mrs. Mariani had struck her. The defendant cites in support of her theory the case of *State* v. *White,* 151 S. W. 757, 168 Mo. App. 345, where it was held that the lower court should have submitted to the jury the instruction requested by the accused. In that case a woman addressed to a neighbor, with whom she had a quarrel, the following words: "You dirty, whoring bitches, you dirty low down dogs." The instruction requested by the defendant and refused by the court reads thus: "If the jury from the evidence and circumstances in evidence believe that the words spoken by the defendant were uttered by her in anger, as terms of abuse and reproach . . . and was not intended as the truth, and was understood by the hearers as being mere terms of abuse and uttered in anger, and not intended to charge them with whoredom, then the jury should find for the defendant."

In passing upon the question raised, the Supreme Court of Missouri said:

"In cases of criminal slander, the gist of the action is the intention of the defendant in uttering the words. (Citation.) The words used must have imputed lack of chastity to the woman or women mentioned. (Citation.) If it is apparent from the circumstances under which the words were uttered that they were not intended or to be understood as imputing such lack of chastity, but were intended and to be understood only as mere terms of abuse or vituperation, then the uttering of them does not constitute criminal slander. (Citations.) Though we are not quite prepared to say that the evidence on the part of the State showed conclusively that the words complained of were used as mere terms of abuse and not to impute lack of chastity, it had, to say the least, a strong tendency in that direction and amply justified the giving of the instruction asked."

It should be noted that in the Missouri case the Supreme Court merely stated what was, in its opinion, the law of said State, and refrained from interfering with the weight accorded to the evidence by the jury. We agree that where it is shown that the slanderous words were uttered without an intent to defame, it can not be said that the crime of slander has been committed, but we think that in order to justify an acquittal it is necessary to overcome the presumption established by law, that all defamatory utterances are malicious and punishable.

The first three sections of the Act to define and punish the crime of slander and libel, read thus:

"1. Slander is a false and malicious utterance made by word of mouth in a public manner against a natural person or a body corporate, whereby said natural person or body corporate is charged with the commission of a deed punishable by law.

"2. Slander is also a tale or report maliciously and publicly made tending to injure the honor, reputation or worthiness of a natural person or body corporate.

"3. Any slanderous statement made publicly, whether in the presence of the injured peson or in his absence, shall be presumed to be malicious and shall constitute the crime of slander."

This court, in the case of *Palou* v. *Rios*, 23 P.R.R. 337, held as follows:

"Now, according to law and jurisprudence, calling a person a thief does not always constitute slander, and after a careful consideration of the evidence introduced and of the findings of fact made by the trial judge, it is not possible, in our opinion, to conclude that the manifest intention of the defendant in this action was to charge the plaintiff with an actual crime of theft or robbery. There is no doubt that the defendant attempted to collect a debt from the plaintiff in an improper and abusive manner. The plaintiff acknowledged the debt, but alleged that not he but a firm of which he was a partner owed the money claimed by the defendant. It was perfectly plain to all who heard the defendant that a business matter was under consideration in which a woman, the defendant, being one of the parties to the transaction, in a moment of passion or wrath

overstepped the limits of both propriety and self-respect, but did not consciously and deliberately charge the commission of a crime.''

In the opinion of the court delivered by the then Associate Justice Del Toro, the cases of *Fawsett* v. *Clark,* 30 Am. Rep. 481, 485, and *Bridgman* v. *Armer,* 57 Mo. A. R. 528, 531, are cited.

In the first-cited case it was said:

''The evidence of the plaintiff, testifying for himself, is, that these words were part of a violent, verbal remonstrance by the defendant against the conduct of the plaintiff, in writing a letter to a third person, relating to defendant's transactions with him—referring to the letter and its contents, the defendant said the plaintiff was 'a liar,' 'a confidence man'—'no better than a thief,'—a thief—that the plaintiff 'had sued him,' and he had offered to pay more than I (the plaintiff) would ever get—'the substance of what Fawsett said in regard to the letter was, that I (the plaintiff) had charged him therein with making false accounts.'

''All the witnesses corroborate this view. The circumstances show that the terms of reproach used were mere abuse—the out-pouring of passion; 'liar,' 'thief,' 'confidence man,' were uttered in quick succession in reference to the contents of the letter, explaining to all who heard them the sense in which they were used.''

In the second case it was declared that one may utter words which of themselves, unexplained, would be slanderous *per se,* but if the facts and circumstances appearing in evidence show that such a charge was not intended and was not so understood by the hearers, then it is not slander. The court went on to say that when such words are shown to have been uttered, it makes a *prima facie* showing that they were intended to convey the charge which they imply, and if any other meaning is sought to be given them, defendant must establish it, unless it appears from plaintiff's own showing.

In the instant case the defendant denied that she addressed to Mrs. Mariani the words imputed to her. There is no other evidence in respect to the alleged fit of anger except what may be inferred from the words attributed to Mrs. Celorio,

and from the quarrel that occurred between the two families. It does not seem logical that one who denies having uttered such words should invoke the defense that they were uttered in a fit of anger. We have no basis to state that the words imputed to Mrs. Celorio were spoken without any intent to defame Mrs. Mariani. The defendant introduced no evidence in this respect. She did not set up her defense on the ground that the words had been spoken by her, and that she uttered them in anger and without the malicious intent with which she is charged and which is presumed by law. In our opinion, the presumption established by the law had not been overcome. The intent with which the words on which the complaint is based were spoken has been determined by the lower court, and we do not think that in view of the evidence introduced, we would be justified in reversing the judgment rendered by said court.

The judgment appealed from should be affirmed.